# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02665-RM-NYW

EVANSTON INSURANCE COMPANY, an Illinois corporation,

    Plaintiff,
v.

AMINOKIT LABORATORIES, INC., a Colorado corporation d/b/a TREATMENT CENTERS XL;
TAMEA RAE SISCO, Individually and as a Principal of Aminokit Laboratories, Inc.; and
JONATHAN LEE, M.D.,

    Defendants.

## ORDER ON MOTION TO QUASH

Magistrate Judge Nina Y. Wang

This matter comes before the court on Non-party Jerad West's ("Mr. West") Motion to Quash Subpoena and for Protective Order ("Motion" or "Motion to Quash"), filed February 2, 2018 [#240],[1] and referred to the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and the Memorandum dated February 2, 2018 [#241]. Having carefully reviewed the Motion and related briefing, the comments offered at the February 5, 2018 Telephonic Discovery Conference, the applicable case, and the entire docket, this court DENIES the Motion to Quash for the reasons stated herein.

## BACKGROUND

The court has discussed the background of this case in prior Orders, *see e.g.*, [#142; #180], and does so here only as it pertains to the instant Motion. This case arises from a dispute over insurance coverage for claims asserted in the separate lawsuit of *Brandon Lassley and Julia*

---

[1] The same substantive motion was filed by Defendant Aminokit Laboratories, Inc. on February 1, 2018. [#237]. The Motion was then refiled, with the proper filing party, on February 2, and the court struck original motion. [#242].

*Walker v. Aminokit Laboratories, Inc. d/b/a Treatment Centers XL; Tamea Rae Sisco; Jonathan Lee, MD; and White Lodging Services Corporation*, No. 15-cv-01531-REB-MJW (the "*Lassley* Suit"). [#61 at ¶ 5]. Plaintiff Evanston Insurance Company ("Plaintiff" or "Evanston") provided Defendants Tamea Sisco and Aminokit Laboratories, Inc. (the "Aminokit Defendants") and Defendant Jonathan Lee, M.D. ("Defendant Lee" or "Dr. Lee") (collectively, "Defendants") a defense in the *Lassley* Suit, but reserved its rights to seek reimbursement from Defendants. [*Id.* at ¶¶ 20, 23]. Evanston then initiated this action and asserts four claims against Defendants. [#46]. Attorney Jared West, who jointly represented Defendants for a time in the *Lassley* Suit, initially represented the Aminokit Defendants, while Dr. Lee proceeded *pro se*. Defendants moved to dismiss Plaintiff's Amended Complaint on April 4, 2016. *See* [#63].

Pending the court's disposition of the Motion to Dismiss, the Parties were directed to proceed with discovery that was contemplated under a Scheduling Order entered before the filing of the Amended Complaint. [#57]. Due to an impasse with certain discovery from third-parties, the undersigned stayed discovery and set this matter for a further Status Conference to discuss scheduling needs, following Judge Moore's ruling on the pending Motion to Dismiss. *See* [#175]. Judge Moore denied the Motion to Dismiss on July 5, 2017. *See* [#180]. The following day, Mr. West and his co-counsel filed their Motion to Withdraw from representation of the Aminokit Defendants, prompting this court to set a Status Conference for July 12, 2017. *See* [#181; #184].

At the July 12 Status Conference, this court granted the Motion to Withdraw and ordered any new counsel for the Aminokit Defendants to enter an appearance on or before August 11, 2017. [#193]. The Aminokit Defendants were also to file their Answer to Plaintiff's Amended Complaint as well as their Response to Evanston's Motion for Partial Summary Judgment on or

2

before August 12, 2017, and this court set a further Status Conference for August 30, 2017. [*Id.*; #194]. The Aminokit Defendants failed to file an Answer to Plaintiff's Amended Complaint or a Response to its Motion for Partial Summary Judgment, and Plaintiff has since moved for entry of default and default judgment against both. *See* [#204; #207]. The Clerk of the Court entered default against the Aminokit Defendants on September 19, 2017. [#211]. The Motion for Default Judgment [#207] remains pending.

On August 21, 2017, Ms. Sisco filed a Suggestion of Bankruptcy indicating that she filed a voluntary petition for Chapter 7 bankruptcy on July 21, 2017. *See* [#206]. The Suggestion of Bankruptcy stated, "Any action against Aminokit is stayed, as it is a 100% asset of the bankruptcy estate." [*Id.*]. The Parties discussed whether the automatic stay associated with Ms. Sisco's petition for bankruptcy also applied to Aminokit at the August 30 Status Conference. [#209]. This court issued an Order directing the parties to proceed with discovery as to Aminokit, including from Ms. Sisco as Aminokit's agent, unless or until the bankruptcy court extended the automatic stay to Aminokit. [#212]. By that same Order this court reiterated that the discovery cut-off remained set for November 17, 2017. *See* [*id.*].

Based on Plaintiff and Dr. Lee's motion, the undersigned extended the discovery cut-off to November 30, 2017, for the sole purposes of conducting the depositions of Plaintiff and Dr. Lee. *See* [#221]. This court then conducted a Telephonic Discovery Conference on December 7, 2017, to discuss the untimely disclosure of Mr. West as a potential witness for Dr. Lee and Plaintiff's Motion to Strike that disclosure. *See* [#223; #224; #226]. The undersigned denied Plaintiff's Motion to Strike, but granted Plaintiff permission to depose Mr. West out of time. *See* [#226]. Mr. West's deposition was to occur on or before January 10, 2018, *see* [*id.*], but was later extended to February 12, 2018, upon Plaintiff's request, *see* [#230].

Mr. West filed the instant Motion on February 2, 2018. [#240]. Mr. West moves to quash Plaintiff's subpoena setting him for deposition or for a protective order limiting the scope of his potential deposition testimony on grounds that his deposition will require the disclosure of information protected by the attorney-client privilege and Colorado's Dispute Resolution Act ("CDRA"), Colo. Rev. Stat. § 13-22-307, relating to his representation of Defendants in the *Lassley* Suit and in this matter. *See generally* [*id.*].[2] On February 5, 2018, the undersigned conducted a Telephonic Discovery Conference on the issues outlined in the Motion to Quash, and ordered that any responses be filed on or before February 14, 2018, and that any replies be filed by February 16, 2018. [#243]. Plaintiff and Dr. Lee both filed Responses, *see* [#244; #245]; Mr. West has not filed a Reply, but this court may nonetheless proceed. *See* D.C.COLO.LCivR 7.1(d). I now consider the arguments raised in the Motion to Quash.

## LEGAL STANDARDS

**I.  Rule 26(c)**

Rule 26(c) of the Federal Rules of Civil Procedure provides that a court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). The party seeking a protective order bears the burden of establishing its necessity, *Centurion Indus., Inc. v. Warren Steurer & Assoc.*, 665 F.2d 323, 325 (10th Cir. 1981), but the entry of a protective order is left to the sound discretion of the court, *see Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008). As part of the exercise of its discretion, the court may also specify the terms for disclosure. Fed. R. Civ. P. 26(c)(1)(B).

---

[2] Mr. West's Motion also appears to suggest that he was not properly served with the subpoena, *see* [#240 at ¶ 3]; however, emails submitted by Evanston reveal that this issue has been resolved, *see* [#244-2 at 1].

The good cause standard is highly flexible, having been designed to accommodate all relevant interests as they arise. *See Rohrbough*, 549 F.3d at 1321.

## II.     Rule 45

A subpoena served on a third party pursuant to Rule 45 of the Federal Rules of Civil Procedure is considered discovery within the meaning of the Federal Rules of Civil Procedure. *Rice v. U.S.*, 164 F.R.D. 556, 556–57 (N.D. Okla. 1995). Accordingly, a subpoena is bounded by the same standards that govern discovery between the parties—to be enforceable, a subpoena must seek information that is relevant to a party's claims or defenses, and are proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). On a timely motion, the court must quash a subpoena that, *inter alia*, requires the disclosure of privileged or other protected matter, if no exception or waiver applies. *See* Fed. R. Civ. P. 45(d)(3)(A), (d)(3)(B). "Absent a finding by a court that a valid basis exists to quash a subpoena, the party receiving the subpoena must comply with it." *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997) (explaining, "[a]bsent a specific showing of a privilege or privacy, a court cannot quash a subpoena duces tecum").

## ANALYSIS

## I.     Attorney-Client Privilege

In this case, the court's subject matter jurisdiction is based on diversity. [#61 at ¶ 9]. Thus, Colorado substantive law governs the scope and application of the attorney-client privilege. *White v. Am. Airlines, Inc.*, 915 F.2d 1414, 1424 (10th Cir. 1990) ("In a civil action based upon a state cause of action, state law controls the determination of privileges."). Colorado has codified the attorney-client privilege in pertinent part as follows:

> "An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment . . ."

Colo. Rev. Stat. § 13-90-107(b). The law is clear that the attorney-client privilege inures to the benefit and protection of the client, to allow a client to gain counsel, advice, or direction with respect to the client's rights and obligations confidentially. *See Mountain States Tel. & Tel. Co. v. DiFede ("DiFede")*, 780 P.2d 533, 541 (Colo. 1989). The party seeking to invoke the attorney-client privilege bears the burden of establishing that it attaches.

The attorney-client privilege is not absolute. The privilege may be waived, and the burden of proving such waiver rests upon the party seeking to overcome the privilege. *DiFede*, 780 P.2d at 542; *accord. H. ex rel. Holder v. Gold Fields Mining Corp.*, 239 F.R.D. 652, 655 (N.D. Okla. 2005) ("[T]he majority view is that the party claiming waiver has the burden of proof on that issue."). A waiver of the attorney-client privilege may be either express or implied. A waiver may be express when a party affirmatively consents to disclosure of the information. *See, e.g.*, *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (explaining that a client may waive the attorney-client privilege by disclosing privileged communications to a third-party; noting, "Any voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege." (citation and internal quotations omitted)). Waiver may also be implied through conduct. *See, e.g.*, *People v. Madera*, 112 P.3d 688, 691 (Colo. 2005) ("Courts have found implied waiver of the attorney-client privilege when a defendant places the allegedly privileged communication at issue in the litigation, because 'any other rule would enable the client to use as a sword the protection which is awarded him as a shield.'" (citations omitted)).

As mentioned, Mr. West initially represented the Aminokit Defendants and Dr. Lee in the *Lassley* Suit. This representation included the March 2, 2016 mediation (the "Mediation") and subsequent settlement negotiations between Defendants and Evanston regarding the mediation

proposal. *See* [#240 at ¶ 5; #245 at 5–6]. Soon after the Mediation Mr. West withdrew as counsel for Dr. Lee in the *Lassley* Suit. *See* [#240 at ¶ 5; #245 at 6]. Mr. West continued to represent the Aminokit Defendants through the duration of the *Lassley* Suit and for parts of the instant matter before withdrawing from representation on July 12, 2017. *See* [#240 at ¶¶ 5–6]. Because of his representation of Defendants at same point throughout the *Lassley* Suit and this action, Mr. West argues that "any testimony he could provide likely would invade the attorney client privilege of one or more prior clients." [*Id.* at ¶ 8]. He stresses that a waiver by one of his prior clients "does not constitute a waiver of privilege by the others." *See* [*id.*]; *see also* [*id.* at ¶¶ 9, 14, 19–21, 23–24].

Evanston indicates that it takes no position on Mr. West's attorney-client privilege objections, and states that it will not proceed with a deposition if "there is nothing [Mr.] West *can* testify to because of the duties of confidentiality he owes his Aminokit clients[.]" [#244 at 2 (emphasis in original)]. Dr. Lee, however, argues that Mr. West's attorney-client privilege arguments are now moot, because all of his former clients have agreed to waive the privilege under the circumstances. *See* [#245 at 1, 3, 8–9]. For instance, Dr. Lee has submitted a signed waiver signed by Tamea Sisco wherein the Aminokit Defendants affirmatively waive the attorney-client privilege to avoid any prohibitions on Mr. West's deposition testimony. *See* [#247 at 3]. Further, Dr. Lee contends that Mr. West's testimony will be limited in scope to communications Mr. West had directly with Dr. Lee regarding the dispute over Dr. Lee's separate dismissal from the *Lassley* Suit with prejudice and without payment, following settlement in the *Lassley* Suit. *See* [#245 at 3, 6–7]; *see also* [*id.* at 9 (listing 6 areas of testimony that Mr. West may have knowledge of regarding the *Lassley* Suit settlement)]. Dr. Lee continues

that "***Mr. West is the only person that can confirm that this agreement was reached with all parties.***" [*Id.* at 6 (emphasis in original)].

As an initial matter, some of the topics that are identified by Dr. Lee are clearly not covered by the attorney-client privilege. For instance, Mr. West's communications with defense counsel regarding the settlement of the *Lassley* Suit does not fall within the privilege. [#245 at 9]. Similarly, Mr. West's communications with Mr. Lassley's counsel are not afforded the protections of the privilege.

As to the other topics, I find that the attorney-client privilege has been waived—through the Aminokit Defendants' signed waiver, Dr. Lee's Notice of Stipulation: Waiver Regarding Mr. West's Testimony [#247], and Dr. Lee's representations in his Response—by each Defendant that was represented by Mr. West, either in the *Lassley* Suit or in the instant action. *See People v. Sickich*, 935 P.2d 70, 73 (Colo. App. 1996) ("Any waiver must be demonstrated by evidence that the client, by words or conduct, has expressly or impliedly forsaken his or her claim of confidentiality with respect to the information in question and, thus, has consented to its disclosure."). Moreover, the communications and topics at issue that Dr. Lee seeks to highlight through Mr. West's testimony were put at issue by Dr. Lee, *e.g.*, [#245-1 at 5–6], to support his defenses in this action and by the Aminokit Defendants with their identification of the particular correspondences. Under such circumstances, any attorney-client privilege that may shield these discussions is deemed waived. *See People v. Trujillo*, 144 P.3d 539, 543 (Colo. 2006) ("[I]f a client asserts a claim or defense that depends upon privileged information, she cannot simultaneously use the privilege to keep that information from the opposing party."). In

8

addition, counsel for Mr. West can always invoke the attorney-client privilege to guard against any testimony that falls outside of the Aminokit Defendants' waiver.³

## II. Colorado's Dispute Resolution Act

In addition to the principles set forth above, communications and/or documents related to settlement negotiations may be protected by the CDRA, which provides, in pertinent part:

> Any party or the mediator or mediation organization in a mediation service proceeding or a dispute resolution proceeding shall not voluntarily disclose or through discovery or compulsory process be required to disclose any information concerning any mediation communication or any communication provided in confidence to the mediator or a mediation organization, unless and to the extent that:
>
> (a) All parties to the dispute resolution proceeding and the mediator consent in writing; or
>
> (b) The mediation communication reveals the intent to commit a felony, inflict bodily harm, or threaten the safety of a child under the age of eighteen years; or
>
> (c) The mediation communication is required by statute to be made public; or
>
> (d) Disclosure of the mediation communication is necessary and relevant to an action alleging willful or wanton misconduct of the mediator or mediation organization.

Colo. Rev. Stat. § 13-22-307. "Mediation communications" are defined as "any oral or written communication prepared or expressed for the purposes of, in the course of, or pursuant to, any mediation services *proceeding*." *Id.* at § 13-22-307(2.5) (emphasis added). The Colorado Supreme Court has been careful to explain that the definition of "mediation communication" does "not [] extend to all communications that may in some way or another be related to the mediation. Rather, 'mediation communications' are limited to those made in the presence or at the behest of the mediator." *See Yaekle v. Andrews*, 195 P.3d 1101, 1110 (Colo. 2008) (en banc). Documents pre-dating or subsequent to the actual mediation may be covered by the

---

³ Dr. Lee has waived his privilege with respect to the communications he had with Mr. West and, presumably, any other concerns will be adequately protected by his counsel at the deposition.

9

confidentiality contemplated by § 13-22-307, but the *Yaekle* decision makes clear such inquiry is fact-intensive. *Id.*[4]

Mr. West also moves to quash the subpoena or for a protective order, because his deposition testimony will relate to the Mediation and discussions concerning settlement of the *Lassley* Suit thereafter. *See* [#240 at ¶ 22]. He maintains that Defendants, represented by Mr. West, were all parties to the Mediation and, thus, any communications between Defendants and their counsel "during this time are mediation communications which cannot be disclosed pursuant to [the CDRA]." [*Id.*].

Evanston and Dr. Lee both oppose Mr. West's invocation of the CDRA. Evanston argues that Defendants' voluntary production of the communications and discussions at issue reveals that the CDRA is inapplicable, and that a review of these communications and discussions demonstrate that they were not "made in the presence or at the behest of the mediator." [#244 at 4–5]. Dr. Lee contends that Mr. West lacks standing to assert the protections of the CDRA because he was not a party to the mediation and no longer represents any party to the Mediation. *See* [#245 at 10]. Based on the record before the court, I conclude that the CDRA is inapplicable.

Mr. West appears to invoke the CDRA to cover all communications and discussions regarding the Mediation. *See* [#240 at ¶ 22]. But, as explained, the CDRA protects only "those communications made in the presence or at the behest of the mediator." *See Yaekle*, 195 P.3d at 1110. Here, none of the communications and discussions at issue, *see* [#244-5], appear to be made in the presence or at the behest of the mediator. Rather, these communications and

---

[4] Though not argued, I note that neither Rule 408 of the Federal Rules of Evidence nor Rule 408 of the Colorado Rules of Civil Procedure bar discovery into communications and documents related to mediations; and one will not be implied here. *See See Heartland Surg. Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 1246216, at *3 (D. Kan. Apr. 27, 2007).

10

discussions occurred post-mediation and concern negotiations between Mr. West and opposing counsel as to whether Evanston would agree to the amount reached in the Mediation and what amount, if any, Evanston would be willing to cover; whether settlement of the *Lassley* Suit would result in the dismissal of the Aminokit Defendants with prejudice and Dr. Lee with prejudice and without payment; and whether Evanston would pursue this instant action in the event the *Lassley* Suit settled. *See generally* [#244-5]. There is no indication that Mr. West engaged in these discussions at the direction of the mediator. Accordingly, the CDRA does not attach to these communications and discussions.

### III. Undue Burden

Lastly, Mr. West argues in passing that, because he is a non-party to this instant action, his appearance at a deposition is "unduly burdensome," such that the court should limit the scope of his deposition. *See* [#240 at ¶ 25]. But based on the foregoing discussion, it is not readily apparent that Mr. West's deposition constitutes an undue burden, subject to a protective order narrowing its scope.

Dr. Lee's Response indicates six (6) areas of communications related to the Mediation and settlement of the *Lassley* Suit that Mr. West may have knowledge of. These include his communications with: (1) Aminokit, outside the presence of Dr. Lee, regarding the defense and settlement of the *Lassley* suit; (2) Dr. Lee regarding his defense and settlement of the *Lassley* Suit; (3) Ms. Sisco that Ms. Sisco authorized Mr. West to relay to Dr. Lee; (4) defense counsel regarding settlement of the *Lassley* Suit; (5) Mr. Lassley's counsel regarding Dr. Lee's dismissal without payment with the full support of Aminokit; and (6) Evanston's counsel regarding the agreement to dismiss Dr. Lee without payment and Aminokit's approval of such a dismissal. *See* [#245 at 9–10]. Dr. Lee further indicates that Mr. West's deposition and trial testimony will be

11

"narrowed to only those topics that do not invade any residual privilege for which Mr. West has a duty to protect under [Colo. Rev. Stat.] § 13-90-107(b)." [*Id.* at 10]. This limited scope is also reflected in Dr. Lee's initial disclosures. *See* [#245-1 at 5–6].

For this reason and those above, I conclude that the deposition of Mr. West will not constitute an undue burden, subject to the following express limitations. The deposition will be confined to the six topics identified above and to communications made outside of the Mediation. Further, nothing in this Order shall limit Mr. West's ability to object to any line of questioning deemed protected by any privilege that has not been deemed waived.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) Jared West's Motion to Quash [#240] is **DENIED**; and

(2) Mr. West shall make himself available for deposition on or before **April 20, 2018**.

DATED: March 29, 2018

BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge