**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 15-cv-02665-RM-NYW

EVANSTON INSURANCE COMPANY,

Plaintiff,

v.

AMINOKIT LABORATORIES, INC., and
JONATHAN LEE, M.D.,

Defendants.

---

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**

---

A bench trial on this matter was held before the Court on January 8, 2019. Plaintiff Evanston Insurance Company tried its unjust enrichment claim against Defendant Jonathan Lee, M.D. After the trial, the Court took the matter under advisement and ordered the parties to submit proposed findings of fact and conclusions of law. The parties filed their proposals on January 18, 2019. (ECF Nos. 297, 298.) Having reviewed the evidence presented, the post-trial submissions, applicable law, and arguments of counsel, the Court now enters its Findings of Fact, Conclusions of Law, and Order.

**I.     BACKGROUND**

This litigation involves a coverage dispute between an insurance carrier and those claiming benefits under an insurance policy it had issued. Plaintiff Evanston Insurance Company ("Plaintiff" or "Evanston") filed the operative amended complaint against defendants Aminokit Laboratories, Inc. ("Aminokit"), Tamea Rae Sisco ("Sisco"), and Jonathan Lee, M.D ("Lee")

(collectively referred to as "the Defendants").[1]  (ECF No. 46.)  This coverage action stems from an earlier civil lawsuit in which the Defendants were sued by a former patient.  In the underlying lawsuit, Lee sought benefits (defense and indemnity) under the policy.

In this case, Evanston alleges two claims for relief against Lee: (1) declaratory judgment; and (2) unjust enrichment for $26,407.36 paid in defense costs and $260,000.00 paid for settlement of the underlying lawsuit.  Before trial, the Court granted Evanston summary judgment against Lee on the declaratory judgment claim, declaring that Evanston owed no duty to defend or indemnify Lee in the underlying lawsuit.  (ECF No. 267.)  The Court also granted Evanston summary judgment as to the claim that Lee was unjustly enriched by its payment of defense costs in the amount of $26,407.36.  (*Id.* at 19.)  Thus, only two issues remained for trial to the Court: (1) whether Evanston could recover the $260,000 settlement payment from Lee under its unjust enrichment claim; and (2) if so, whether Lee is jointly and severally liable for the entire $260,000.  The Court now turns to the resolution of these two remaining issues.

## II. FINDINGS OF FACT

To the extent that any conclusions of law are deemed to be findings of fact, they are incorporated herein by reference as findings of fact.

1. Evanston issued policy no. SM903576 (the "Policy") to Aminokit for policy period October 19, 2014 to December 19, 2015.  The Policy contained two Coverage Parts: Specified Medical Professions Professional Liability Insurance – Claims Made Coverage affording limits of $1,000,000 Each Claim and $3,000,000 Aggregate; and Specified Medical Professions General Liability (Including Products and Completed Operations Liability) Insurance – Claims Made Coverage affording limits of $1,000,000 Each Claim, $3,000,000 Aggregate.

---

[1] Aminokit defaulted and Sisco was dismissed before trial.

2. On July 20, 2015, Brandon Lassley, and his mother, Julia Walker, filed a lawsuit in the United States District Court for the District of Colorado, Case No. 15-cv-1531 ("*Lassley*"). The *Lassley* lawsuit named the following four defendants: Aminokit Laboratories, Inc.; Tamea Rae Sisco, individually and as beneficial owner of Aminokit; Jonathan Lee, MD; and White Lodging Services Corporation.

3. The *Lassley* complaint identified Lee as a medical doctor, the medical director of Aminokit, and the only employee who was medically trained. Defendant Lee is alleged to have had knowledge of and participated in the fraudulent scheme that was being perpetrated against Aminokit's unsuspecting patients. Lassley and his mother alleged that Aminokit was little more than an amalgamation of misrepresentations, fraud, and unlicensed medical care in an unsafe environment (treating patients at a Fairfield Inn) and that its employees held themselves out as having medical training and expertise when, in actuality, they did not.

4. The initial *Lassley* complaint advanced three claims for relief against Lee:

   a. The first claim against Defendant Lee asserted violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*. The conduct that undergirds the RICO claim pertaining to Defendant Lee was his participation in the submission of fraudulent insurance claims via wire and mail;

   b. The second claim against Lee accused him of being part of a civil conspiracy with respect to his participation in the fraudulent enterprise; and

   c. The third claim alleged that Defendant Lee breached a fiduciary duty he owed to the patients of Aminokit by failing to provide adequate treatment by licensed professionals.

5. The *Lassley* plaintiffs sought to hold the four named defendants jointly and severally liable.

6. After being served with the *Lassley* complaint, Lee requested defense coverage and indemnification from Evanston under the Policy.

7. By letter dated August 28, 2015, Evanston denied Lee coverage for all claims advanced against him in the initial *Lassley* complaint.

8. On October 15, 2015, the plaintiffs in the *Lassley* lawsuit amended the complaint to add a fourth claim against Lee (and other defendants) for negligence.

9. The amended complaint in the *Lassley* case alleged that Lee was negligent because, as a treating physician to the patients at Aminokit, he owed his patients a duty to ensure that they received adequate and appropriate medical care, but breached this duty.

10. Lee again requested coverage for the claims asserted against him in the amended *Lassley* complaint.

11. In response to the amended *Lassley* complaint, Evanston supplemented its coverage position with a letter dated December 8, 2015. In the supplemental coverage letter, Evanston reiterated its position that no coverage existed, but stated that it would provide a defense to Lee, subject to a full reservation of its rights, specifically including the right to withdraw the defense and the right to pursue reimbursement. Lee requested that attorney Dick Waltz represent and defend him in the *Lassley* case; Evanston agreed to (and paid for) Mr. Waltz's representation of Lee.

12. On December 9, 2015, Evanston filed this declaratory judgment action against Aminokit, Sisco, and Lee seeking a determination of its rights and obligations under the Policy.

13. Aminokit, Sisco, and Lee retained the law firm of Lamdin & Chaney, LLP to represent their interests in the coverage dispute between them and Evanston.

14. On March 2, 2016, the parties, counsel, and insurance representatives related to the *Lassley* matter attended a mediation before former U.S. District Judge William F. Downes.

15. Jerad West, an attorney from Lamdin & Chaney, represented Aminokit, Sisco, and Lee at the March 2, 2016 mediation. Mr. West testified at the bench trial.

16. Jagady Blue, a claims service manager from Markel, attended the mediation on behalf of Evanston. Markel serves as the claims administrator for Evanston. Mr. Blue testified at the bench trial.

17. By the end of the mediation on March 2, 2016, the parties had not reached a settlement agreement.

18. Following the mediation, the *Lassley* plaintiffs offered to settle their claims against Aminokit, Sisco, and Lee in exchange for payment of $260,000.00. The settlement offer remained open until 5:00 p.m. on Friday, March 4, 2016.

19. On March 3, 2016, Mr. West, on Lee's behalf, requested that Evanston pay the $260,000.00 to settle the *Lassley* case. Mr. West explained that the settlement payment was $100,000 less than what Judge Downes believed the settlement value of the *Lassley* case to be. Additionally, Mr. West stated that a judgment on the negligence claim presented the potential for "uncovered claims"—i.e., judgment exceeding the coverage limits under the Policy. Lee would have been personally responsible for funding any judgment amount that exceeded coverage afforded by the policy—the aforementioned "uncovered claims."

20. On March 3, 2016, Mr. West sought clarification from Evanston that, as a term of settling the *Lassley* case, the separate declaratory judgment action (this case) would be dismissed with prejudice.

21. On the morning of March 4, 2016, Mr. West requested that Evanston communicate the maximum amount of money it would pay to settle the *Lassley* lawsuit.

22. Evanston responded later in the morning on March 4, 2016, offering to pay $165,000 towards the settlement and requested that Aminokit, Sisco, and Lee contribute $95,000 to settle the claims for $260,000 as the *Lassley* plaintiffs had offered.

23. Mr. West responded to Evanston's request that Aminokit, Sisco, and Lee contribute $95,000 by stating that an adverse judgment on the negligence claim will likely exceed policy limits, and that it was "playing a dangerous game," which was a threat that Evanston may be liable to Lee on a bad faith claim should it not accept and fund the settlement.

24. Aminokit, Sisco, and Lee did not agree to contribute $95,000 to the settlement of the *Lassley* claims.

25. Prior to expiration of the *Lassley* plaintiff's $260,000 settlement offer, Evanston notified Aminokit, Sisco, and Lee that it would seek reimbursement of the entire cost of defense and indemnity if it were to accept and fund the settlement on their behalf. In other words, Evanston would not dismiss its declaratory judgment action as part of the settlement.

26. After Evanston notified Aminokit, Sisco, and Lee that it would seek reimbursement of the entire cost of defense and indemnity, Lee's coverage counsel, Mr. West, again requested that Evanston accept and fund the $260,000 settlement offer from the *Lassley* plaintiffs.

27. On the day the settlement offer was accepted, Evanston, Aminokit, Sisco, and Lee reserved all rights against each other.

28. The settlement offer provided that if the *Lassley* plaintiffs were paid $260,000, Lee would be dismissed with prejudice from the underlying lawsuit. If the *Lassley* plaintiffs were not paid $260,000, Lee would not be dismissed from the underlying lawsuit. No apportionment of the $260,000 settlement payment was made.

29. Evanston timely accepted the *Lassley* plaintiffs' settlement offer and agreed to fund the settlement in exchange for the dismissal with prejudice of Aminokit, Sisco, and Lee.

30. Prior to acceptance of the settlement, Lee asked his coverage counsel, Jerad West, to obtain his dismissal from the *Lassley* lawsuit separate from Aminokit and Sisco. He also sought to have no portion of the settlement payment be allocated to him so that the settlement and dismissal would not be a "reportable event" for purposes of any medical board. The plaintiffs in the *Lassley* lawsuit agreed to such an arrangement as did the other parties. But at no point did the *Lassley* plaintiffs agree that Lee would be dismissed *without payment* of the $260,000 by someone.

31. Prior to accepting the settlement, Evanston communicated to Lee that it would not agree that no portion of the settlement payment be allocated to him. With knowledge that Evanston would not agree to such a term, Lee requested that Evanston accept and fund the *Lassley* plaintiffs' $260,000 settlement offer to obtain his dismissal with prejudice from the underlying case.[2]

---

[2] At the bench trial and in his post-trial submission (ECF No. 298 at 6-7), Lee argued that he wanted the same dismissal terms in the *Lassley* case as in "the *George* case." In connection with the *George* case, a separate coverage action was filed in this court by a different insurance carrier—case number 16-cv-412. Ironically, that case ended with a judgment entered against Lee finding him "responsible for the defense costs Underwriters incurred in defending him in the George Lawsuit." (*See* 16-cv-412, ECF No. 55.) Although Lee testified that the carrier dismissed him from the coverage action related to the *George* case after he wrote them a letter, the judgment states otherwise.

32. After the settlement offer had been accepted and Evanston agreed to pay the $260,000 settlement payment, Lee refused to sign the settlement agreement reached to resolve the *Lassley* lawsuit because it did not contain his requested language that the agreement would not constitute a "settlement" with him. Evanston again objected to the inclusion of such a term as it had done before agreeing to accept and fund the settlement. Lee did not sign the agreement. All other parties signed the agreement.

33. Evanston made a single payment of $260,000 to the *Lassley* plaintiffs to settle the lawsuit. After the settlement payment was made, Aminokit, Sisco, and Lee were dismissed from the *Lassley* lawsuit with prejudice. Lee did not object to his dismissal with prejudice from the *Lassley* case.

## III. CONCLUSIONS OF LAW

To the extent that any findings of fact are deemed to be conclusions of law, they are incorporated herein by reference as conclusions of law.

Colorado law recognizes insurers' broad duty to defend insureds and the insurers' right to reimbursement should there turn out to be no coverage. The Tenth Circuit quoted the Colorado Supreme Court's precedent on the issue as follows:

> [I]n *Hecla* . . . [w]e attempted to balance the interest of both the insurers and insureds by ensuring that the broad rule basing the duty to defend on the complaint will not require insurers to pay defense costs if coverage ultimately does not exist under the policies. . . . [W]e . . . attempted to create a remedy for insurers that provided defenses to insureds when coverage ultimately did not exist.

*Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1092 (10th Cir. 2010) (quoting *Cotter Corp. v. American Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 828 (Colo. 2004)). The Circuit explained that the rule struck a balance between the interests of insurers and insureds:

> On the one hand, in an effort to protect insureds, Colorado law imposes a duty on insurers to advance funds toward the defense of claims that may ultimately turn out not to be covered under the insurance policies. On the other hand, the state recognizes a corresponding legal remedy, allowing insurers to obtain reimbursement when coverage is found not to exist, so long as they reserve (at least by letter) the right to do so.

*Valley Forge*, 616 F.3d at 1092. At the bench trial, Evanston presented its unjust enrichment claim for reimbursement of its $260,000 settlement payment.

### 1. Was Lee unjustly enriched by the $260,000 settlement payment?

The Court finds Lee liable to Evanston on its unjust enrichment claim. "Unjust enrichment is a form of contract, or quasi-contract, implied by law that does not rely upon a promise between parties." *Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1205 (Colo. App. 2009). "[A] party claiming unjust enrichment must prove that (1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008) (en banc).

First, Lee received a benefit from the $260,000 settlement payment because he was dismissed with prejudice from the *Lassley* lawsuit.

Second, the benefit was received by Lee at Evanston's expense because it funded the $260,000 settlement, which was a prerequisite to his dismissal.

Finally, Lee received the benefit of Evanston's $260,000 settlement payment under circumstances that would make it unjust for him to retain the benefit without commensurate compensation. Lee requested a legal defense and coverage under the Evanston policy. In December of 2015, Evanston provided Lee the requested defense, subject to a full reservation of its rights, including the right to withdraw the defense and the right to pursue reimbursement. After the March 2, 2016 mediation, the *Lassley* plaintiffs offered to dismiss Aminokit, Sisco, and

9

Lee in exchange for payment of $260,000. Lee insisted that Evanston accept the settlement offer and fund the settlement—he did so while threatening Evanston with the potential for a bad faith lawsuit and reserving his right to pursue such a claim. Evanston made it clear to Lee that it would continue to seek reimbursement of the settlement payment, through this pending declaratory judgment action should it accept and fund the settlement. Despite Evanston's position being clear, Lee persisted in requesting that Evanston accept and fund the $260,000 settlement. Evanston paid the $260,000 settlement and Lee obtained dismissal from the *Lassley* lawsuit with prejudice—such dismissal eliminated his further liability in the lawsuit. And a leading insurance treatise states that "[i]f an insured expressly or tacitly approves a settlement in advance, the settlement will be treated as made for and in behalf of the insured." *Need for insured's consent*, 14 Couch on Ins. § 203:8. All that Lee proved at trial was that he sought to have no portion of the settlement payment *allocated* to him so that the settlement and dismissal would not be a "reportable event" for purposes of any medical board.[3] Evanston rejected such a term, yet Lee insisted on settlement with knowledge that Evanston would not agree (and had reserved its right to continue seeking reimbursement in this pending lawsuit on at least two separate occasions). Therefore, Lee is liable to Evanston on its unjust enrichment claim.

## 2. Is Lee jointly and severally liable for the $260,000 settlement payment?

The Court finds that Lee is jointly and severally liable for the $260,000 settlement payment. Lee asserted that even if he is liable on Evanston's unjust enrichment claim, his liability should not be joint and several for the full $260,000. Instead, Lee argued that no portion of the settlement payment should be allocated to him. Evanston countered that joint and several

---

[3] It remains unclear whether the settlement with the *Lassley* plaintiffs constituted a "reportable event." Lee refused to sign the settlement agreement, but was still dismissed from the lawsuit with prejudice. Thus, it may be the case that Lee ultimately received this additional benefit that he sought.

10

liability should be imposed because Lee would have been jointly and severally liable to the *Lassley* plaintiffs in the underlying lawsuit; the settlement offer and payment were an all-or-nothing proposition; Lee received the full benefit of the settlement payment; and the Court has discretion to impose joint and several liability against a defendant.

Joint and several liability applies where damages arise from a single indivisible injury. *Kussman v. City & Cty. of Denver*, 706 P.2d 776, 780 (Colo. 1985). *Dunham v. Kampman*, 547 P.2d 263, 266 (Colo. App. 1975) exemplifies the implication and purpose of joint and several liability where the plaintiff suffers a single indivisible injury.[4] There, a jury found a motorist to be only 1% negligent and a motorcyclist 99% negligent for the plaintiff's injuries. *Id.* Even though the motorist was 1% at fault, the plaintiff was permitted to recover all of her damages from the motorist; and the court rejected an apportionment of damages between them. *Id.* The purpose of such a rule is to ensure that a plaintiff will be fully compensated for indivisible injuries caused by multiple tortfeasors. In the insurance reimbursement context, *Axis Surplus Ins. Co. v. Reinoso*, 208 Cal. App. 4th 181 (Cal. Ct. App. 2012) provides a helpful comparison. In *Reinoso*, a husband and wife were sued by tenants who resided at one of their rental properties. They both requested a defense from their insurer who defended and ultimately funded the settlement of the case in the amount of $2,162,500 and paid defense costs of about $300,000. *Id.* at 185. The insurer then brought a reimbursement action against both insureds to recover those amounts—the insurer was awarded a judgment against the insureds for $2.1 million, which was joint and several. On appeal, the wife argued that she had minimal liability in the underlying

---

[4] Colorado enacted the Uniform Contribution Among Tortfeasors Act to permit equitable apportionment of damages among tortfeasors jointly responsible for a plaintiff's injuries, but it "retained joint and several liability for all tortfeasors found to be liable for the same injury." *Fibreboard Corp. v. Fenton*, 845 P.2d 1168, 1176 (Colo. 1993) (citing *Kussman v. City & Cty. of Denver*, 706 P.2d 776, 780 (Colo. 1985)). Because Evanston's claim is for unjust enrichment—a remedy, not a tort—the Court does not find the Act directly applicable. But even if it applied, the injury in this case is indivisible.

11

case, the attorney who defended the underlying action made little or no mention of her in analyzing potential liability in the case, and the insurer did not consider her exposure or allocate any settlement proceeds to her in making the settlement payment. *Id.* at 186. The appellate court affirmed joint and several liability against the wife. *Id.* at 195. The court reasoned that the wife received the full benefit of the settlement payment because she was faced with potential liability exposure and the settlement payment eliminated her potential liability. *Id.* Here, no party challenges the reasonableness of the $260,000 settlement payment—in fact, the judge who mediated the case opined that $260,000 was $100,000 less than what he calculated the settlement value of the *Lassley* case to be. Evanston accepted the settlement offer, which resulted in a single payment of $260,000 in exchange for the dismissal of Aminokit, Sisco, and Lee. Lee received the full benefit of the settlement payment because it eliminated future involvement and potential liability in the underlying case. Therefore, Lee is jointly and severally liable for the $260,000 payment.

### 3. *Prejudgment interest.*

Evanston requests prejudgment interest, from May 2016 to present, at the rate of 8% annually pursuant to Colo. Rev. Stat. § 5-12-102. (ECF No. 274 at 12.) Lee did not address prejudgment interest at trial or in his post-trial filing.

"The Colorado prejudgment interest statute allows the court to award interest in an amount which fully recognizes the gain or benefit realized by the person withholding such money, § 5–12–102(1)(a), or at the statutory rate of eight percent per annum compounded annually, § 5–12–102(1)(b)." *Lowell Staats Min. Co. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1270 (10th Cir. 1989) (quotations omitted). "The rate of interest is the statutory rate in the

12

absence of specific proof of the benefit derived by the defendant from its breach." *Id.* (citation omitted).

Here, Evanston filed its amended complaint in this case on March 8, 2016, seeking reimbursement of all amounts it had paid on Lee's behalf. (ECF No. 46.) As of that date, Evanston had clearly demanded reimbursement from Lee. And the sum certain amount of such demand became fixed as of May 2016 when the payments totaling $286,407.36 were processed. Therefore, Evanston shall be awarded prejudgment interest at 8% per annum as to the principal amount of $286,407.36, which amounts to prejudgment interest of $63,527.51.

## IV. CONCLUSION

Based on the foregoing, the Court:

1. FINDS in favor of Evanston and against Defendant Jonathan Lee, M.D. on the second claim for unjust enrichment as to the $260,000 settlement payment;

2. ORDERS that judgment in favor of Evanston be entered against Defendant Jonathan Lee, M.D., which liability is to be joint and several with Aminokit, in the amount of $260,000;

3. FURTHER ORDERS that such judgment shall include $63,527.51 against Defendant Jonathan Lee, M.D. representing prejudgment interest at the rate of 8% annually.

DATED this 7th day of February, 2019.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge